A IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JOHN BERNHOLT, and BERNHOLT DESIGN SOLUTIONS, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> JEFF ALLEN, ABP ENGINEERING, LLC, MMIS HOLDINGS, LLC, and MIDWEST MECHANICAL INDUSTRIAL SERVICES, LLC, <br><br> Defendants. | **8:19CV419** <br><br> **ORDER** |

This case is before the court on the motion for sanctions filed by Plaintiffs John Bernholt and Bernholt Design Solutions, Inc. (hereafter "Plaintiffs"). (Filing No. 65). Plaintiffs claim that Defendants Jeff Allen, ABP Engineering, LLC, MMIS Holdings, LLC and Midwest Mechanical Industrial Services, LLC (hereafter "Defendants") engaged in spoliation when they destroyed certain personal notes and documents created by Plaintiffs and related to the transaction at the heart of this dispute. (Filing No. 65 at CM/ECF p. 1).

As a sanction, Plaintiffs request judgment in their favor. Plaintiffs claim that the purportedly destroyed documents were material evidence and that Defendants' destruction of that evidence is of such an egregious nature as to warrant a summary disposition of this case. (Filing No. 65 at CM/ECF p. 2). In the alternative, Plaintiffs request an adverse jury instruction related to Defendants' destruction of relevant documents. (Filing No. 65 at CM/ECF p. 2).

The court has considered the parties' briefing and evidence. And, being fully advised, finds that a hearing must be held on this matter prior to resolution of

Plaintiffs' motion or the imposition of any sanction. Therefore, as more thoroughly outlined below, the court will require the parties to appear for a hearing to resolve the fact questions presented by this discovery dispute.

BACKGROUND

This lawsuit is the result of the breakdown of a purported agreement between Plaintiffs and Defendants for the purchase/buy-out of Bernholt Design Solutions, Inc., ("BDS"). In broad terms, the parties (at least at the outset) envisioned a buyout of BDS and an integration of BDS's computer aided design ("CAD") services into the offerings of a newly formed entity – ABP Engineering, Inc., (ABP"). See generally ([Filing No. 1 at CM/ECF pp. 3-4](#)). The parties (again, at least at the outset) also envisioned Plaintiff John Bernholt ("Bernholt") continuing in employment at the new ABP entity to spearhead the CAD services once offered by BDS. ([Id](#)).

Plaintiffs claim that Defendants agreed to purchase BDS for a $215,000.00 buy-out price, with additional profit-sharing terms for Plaintiffs, and a continued employment agreement for Bernholt at a $90,000.00 per-year salary. ([Filing No. 1 at CM/ECF p. 4](#), ¶ 21). Defendants claim that although preliminary discussions were had related to the purchase of BDS, no final terms were ever reached. ([Filing No. 71 at CM/ECF p. 1](#)).

Both parties agree that there were several in-person meetings between Plaintiff Bernholt (along with his wife Alison) and Defendant Jeff Allen to discuss the terms of any agreement to purchase BDS. ([Filing No. 66 at CM/ECF pp. 5-6](#));([Filing No. 71 at CM/ECF p. 5](#)). Those meetings occurred in August, September, and October 2018. Following those meetings, Defendants allege that they engaged the Koley Jessen law firm to "help facilitate the transaction," to perform

due diligence, and to draft documents reflecting the parties' deal. (Filing No. 71 at CM/ECF p. 5). On December 12, 2018, the Koley Jessen attorney assisting with the transaction sent draft documents for both parties to review. (Filing No. 71 at CM/ECF p. 6). However, after review of the draft documents, Plaintiffs claim that the terms included did not reflect the terms they believed the parties reached during their earlier in-person meetings. (Filing No. 66 at CM/ECF p. 9).

Sometime "between Christmas and New Year's in December 2018," the parties discussed Plaintiffs' concerns on a telephone conference. (Filing No. 66 at CM/ECF p. 9). Plaintiff Bernholt claims that he addressed each concern in the draft transactional documents with Defendant Allen and that Allen agreed to make all revisions proposed by Bernholt during that conference. (Filing No. 66 at CM/ECF pp. 9-10). Plaintiffs assert that Defendants asked Plaintiffs to prepare a written record reflecting the changes to be made and to provide that written record to Defendants for incorporation into the draft documents. (Filing No. 66 at CM/ECF p. 10). The parties agree that Plaintiffs emailed a list of changes to Defendants on January 2, 2019. (Filing No. 66 at CM/ECF p. 10); (Filing No. 71 at CM/ECF p. 6). However, while Plaintiffs claim that the January 2, 2019 email reflected the agreed-to changes, Defendants claim that Plaintiffs' changes included additional terms that were not agreed-to and that were unacceptable to the Defendants. (Id).

In mid-January 2019, the parties again conducted a telephone conference to discuss the terms of the transaction. The briefing indicates that each party still believed that they were working towards execution of written transactional documents at that point. In fact, Plaintiffs assert in their briefing that Defendant Allen informed them that they would have final drafts of all documents by the end of January 2019. (Filing No. 66 at CM/ECF p. 11).

In the meantime, and prior to any written agreement, the newly formed ABP entity began operation. (Filing No. 71 at CM/ECF p. 8). Plaintiff Bernholt (in the absence of a written employment agreement) began work at ABP while the parties supposedly continued to work on finalization of their written agreement(s). The end of January 2019 came and went, and no written transaction was executed by the parties.

By early March 2019, the parties' relationship had vastly deteriorated. (Filing No. 66 at CM/ECF p. 12). Defendants claim that Plaintiff Bernholt was an inconsistent presence at ABP. Defendants claim that, in spite of their expectations, Bernholt did not keep regular business hours and that his performance when on-site was unsatisfactory. (Filing No. 71 at CM/ECF pp. 9-10). Plaintiffs contest that description of Bernholt's work at ABP. But, on March 7, 2019, Bernholt was terminated as an employee of ABP. (Filing No. 66 at CM/ECF p. 11-12). At the time of his termination, and to-date, no written transaction documents were ever executed related to the buyout of BDS or the terms of Bernholt's employment.

On March 15, 2019, Bernholt requested the return of items he had left in his ABP office. On April 22, 2019, Bernholt received several sealed boxes of items in response. Plaintiffs assert that, upon inspection, they found certain anticipated items missing from the sealed boxes. Plaintiffs state that Bernholt is a habitual note-taker and that he (and his wife Alison) had taken copious notes during their telephone calls and in-person negotiations with Defendants related to the transaction. Plaintiffs claim that Bernholt's notes were primarily stored in two locations: (1) a green journal; and (2) inside a leather portfolio – both of which had been left in his ABP office and were returned in the sealed boxes referenced above. (Filing No. 66 at CM/ECF p. 13). Upon review of the returned items, Bernholt argues that several pages were torn from the green journal and that several pages of his notes were missing from the portfolio. Plaintiffs claim that the

missing notes contain a contemporaneous accounting of the terms of the transaction agreed to by the parties. ([Filing No. 66 at CM/ECF pp. 13-14](#)).

By the end of April 2019, Plaintiffs and Defendants had both retained counsel and had exchanged pre-suit settlement offers and/or demands. On May 20, 2019, Plaintiffs' attorney specifically referenced the allegedly missing pages in a letter to defense counsel. ([Filing No. 66 at CM/ECF pp. 14-15](#)). Plaintiffs' counsel demanded

> …the immediate return of Mr. Bernholt's notes. Your client returned the majority Mr. Bernholt's property, including his daily journal (the green notebook) and his portfolio, but documents were missing and/or torn out of both items. Mr. Bernholt took daily notes in his journal, and all those pages were missing when his journal was returned to him. Please immediately return those items (the pages missing from the daily journal, the papers that were in the pocket and/or the folder of the portfolio, and any other notes) and confirm the return is complete. If anything has occurred to those documents, which were in your clients' custody, we will file a lawsuit and seek sanctions with the Court.

([Filing No. 67-4 at CM/ECF p. 2](#)). In response, Defendants' attorney claimed that Defendants "have searched for and have not located any personal documents belonging to Mr. Bernholt." ([Filing No. 67-5 at CM/ECF p. 5](#)). As a result, Defendants did not return any additional pages, notes, documents or other items to Plaintiffs in response to counsel's request.

This lawsuit was filed on September 20, 2019, and the purportedly missing notes were an issue raised by Plaintiffs almost immediately. Plaintiffs requested them in formal discovery, referenced them in their initial disclosures, and informally discussed their existence and return with opposing counsel in multiple letters.

([Filing No. 67-6](#); [Filing No. 67-7](#); [Filing No. 67-8](#); [Filing No. 67-9](#)).  No additional notes or other disputed documents were provided in response.

Plaintiffs then issued interrogatories in December 2020 that asked for specific answers related to the existence and possible destruction of the missing notes. For example,

> INTERROGATORY NO. 23: Plaintiffs have alleged that John Bernholt's green notebook/journal was returned with several pages torn out and that John Bernholt's leather portfolio was returned with all loose papers missing. Please explain what happened to the journal, the torn out pages, and the missing documents. If ABP (or any of the Defendants) alleges that those documents belong to it, please provide a factual and legal basis for such ownership
>
> ANSWER: Any materials that contained ABP or Midwest Mechanical customer or password information were retained and disposed of by ABP. Any materials retained and disposed of by ABP did not contain Bernholt's personal information.

([Filing No. 67-12 at CM/ECF pp. 2-3](#)). From review of the record, and specifically Defendants' responses to Plaintiffs' interrogatories, it appears that the parties agree that Defendants retained and disposed of some documents. They disagree, however, as to the nature of those documents, whose property they were, and their relevance to this lawsuit. Plaintiffs claim that the documents outlined a detailed account of "[t]he buyout or business purchase discussions at the August and September 2018 meetings includ[ing] the amount of the buyout, the timeline for payment of the buyout, the terms for profit sharing with survivorship, and [Defendant Jeff Allen's] status as a silent partner in the new entity." ([Filing No. 66](#)

at CM/ECF p. 8). Defendants claim that they removed only sensitive customer information or confidential passwords from the green journal.[1] Defendants claim that no ABP representative recalls seeing, handling, or removing any documents from the leather portfolio and "had no intent to destroy any materials relevant to any litigation." (Filing No. 71 at CM/ECF p. 15).

LEGAL STANDARD

"The district court retains an inherent power to impose sanctions[.]" Strutton v. Meade, 668 F.3d 549, 559 (8th Cir .2012) (citing Stevenson v. Union Pac. R.R. Co., 354 F.3d 739, 745 (8th Cir.2004). "A spoliation-of-evidence sanction requires 'a finding of <u>intentional</u> destruction indicating a desire to suppress the truth.'" Greyhound Lines, Inc. v. Wade, 485 F.3d 1032, 1035 (8th Cir.2007) (quoting Stevenson, 354 F.3d at 746) (emphasis added). The "intentional destruction of evidence indicating a desire to suppress the truth" is the "ultimate focus" for a court that is considering the imposition of sanctions for spoliation of evidence. Strutton, 668 F.3d at 559 (quoting Greyhound Lines, 485 F.3d at 1035).

"'Intent is rarely proved by direct evidence, and a district court has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witnesses in a particular case, and other factors.'" Greyhound Lines, 485 F.3d at 1035 (quoting Morris v. Union Pac. R.R., 373 F.3d 896, 902 (8th Cir.2004)). In addition, "[t]here must be a finding of prejudice to the opposing party before imposing a sanction for destruction of evidence." Stevenson, 354 F.3d at 748 (citing Dillon v. Nissan Motor Co., 986 F.2d 263, 267 (8th Cir.1993)).

---

[1] Defendants further allege that while an individual named Sean Gage, an employee of ABP, recalls removing some pages containing the purportedly sensitive information, he apparently misplaced them and has not been able, to date, to locate the documents he removed from Bernholt's green journal.

Here, "the issue of destruction of evidence is a question of fact that is not obvious to the [c]ourt." Prism Techs., LLC v. Adobe Sys., Inc., 2012 WL 1514857, at *4 (D. Neb. Apr. 30, 2012). As noted hereinabove, the parties are at loggerheads as to nature of any documents destroyed. While Plaintiffs claim that their notes have vanished, Defendants' aver that they did not retain or destroy an such documents.

In this posture, the court needs to evaluate the credibility of the competing witnesses' testimony in order to assess any intention to destroy relevant evidence or a desire to suppress the truth. Therefore, the court will require in-court evidence and testimony before it renders a ruling on the spoliation motion. Defendants recognized the same quandary in their briefing, noting that "the parties have submitted dueling evidence in the form of declarations that require the Court to engage in credibility determinations (with lofty consequences) solely on the basis of a review of these dueling declarations." (Filing No. 71 at CM/ECF p. 19). The court agrees that the resolution of this motion on the "dueling declarations" would be inadequate. And, that thinking is in line with the court's previous practice in these matters: When sanctions of this type and magnitude are requested, a hearing is often necessary in order to fully evaluate "witness credibility, motives of the witnesses in a particular case, and other factors" relevant to the spoliation analysis. See Morris, 373 F.3d at 902; see also Peter Kiewit Sons', Inc. v. Wall St. Equity Grp., Inc., 2012 WL 1852048, at *5 (D. Neb. May 18, 2012) (noting that the court "ordered a hearing" prior to resolution of Plaintiff's motion for spoliation sanctions).

Therefore, the court will hold an evidentiary hearing in this matter in order to fully assess whether Plaintiffs have met their burden to prove that Defendants

intentionally destroyed relevant evidence in order to suppress the truth. Greyhound Lines, 485 F.3d at 1035.

Accordingly, IT IS ORDERED:

1. The parties shall review the undersigned magistrate judge's public calendar and select two or more mutually agreeable times and dates at which the court may conduct an evidentiary hearing in accordance with the above. The parties shall jointly provide their availability to the chambers of the undesigned (via email at zwart@ned.uscourts.gov) by no later than July 14, 2021.

2. If the parties consent to proceeding via internet videoconferencing for the above-described hearing, they shall indicate their consent in writing (via email zwart@ned.uscourts.gov) to the court. In the absence of the consent of all parties, the evidentiary hearing in this matter will proceed in-person at the federal courthouse in Omaha, Nebraska.

Dated this 7th day of July, 2021.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge